**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**PUERTO RICO TELEPHONE CO.,**

    **Plaintiff,**

    v.

**PUERTO RICO TELECOMMUNICATIONS REGULATORY BOARD, et al.,**

    **Defendants.**

Civil No. 05-2225 (GAG)

**OPINION AND ORDER**

On November 28, 2005, Plaintiff Puerto Rico Telephone Company ("PRTC") filed the instant complaint (Docket No. 1) seeking declaratory and injunctive relief from a resolution and order issued by co-defendant Puerto Rico Telecommunications Regulatory Board and its individual members (collectively "the Board"). The Board filed a motion to dismiss claiming that the action presents no basis for subject-matter jurisdiction, no claim for relief under the Telecommunications Act, and no waiver of its Eleventh Amendment immunity from suit (Docket No. 14). PRTC timely filed an opposition (Docket No. 19) to which the Board replied (Docket No. 23). For the reasons stated herein, the court **DENIES** the defendant's motion to dismiss.

**I.**    **Standard of Review**

Under Rules 12(b)(1) and 12(b)(6), a defendant may move to dismiss an action against him for lack of federal subject-matter jurisdiction or for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). The court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. See id.; Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). Further, the court must

**Civil No. 05-2225 (GAG)** 2

be "mindful that the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993).

## II.     Factual & Procedural Background

The purpose of the Telecommunications Act of 1996 ("Telecommunications Act" or "Act") is to promote competition in the local telephone services market. See 104 P.L. 104, 2 (stating that the Act is designed "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies"); Puerto Rico Tel. Co. v. Telecommunications Regulatory Bd., 189 F.3d 1,7 (1st Cir. 1999). The act imposes statutory duties on incumbent local exchange carriers (ILEC) to share their networks with competitive local exchange carriers (CLEC). 47 U.S.C § 251(c). ILEC's have the duty to offer its retail services at wholesale rates to competing carriers that will resell the services at retail prices. 47 U.S.C. § 251(c)(4). The ILEC "may negotiate and enter into a binding agreement" with the new entrant "to fulfill the duties" imposed by §§ 251(b) and (c), but "without regard to the standards set forth" in those provisions. §§ 252(a)(1), 251(c)(1). Then, the negotiated interconnection agreement must be submitted to the state utility commission for approval or rejection 47 U.S.C. § 252(a)(1).

On July 18, 2002, PRTC, an ILEC, and Centennial Puerto Rico License Corporation ("Centennial"), a CLEC, executed an Interconnection Agreement ("Agreement"). The Agreement sets the wholesale rates for retail services that Centennial may purchase from PRTC for resale. Among PRTC's services that Centennial can purchase and resell are high-capacity circuits called T-1 circuits that PRTC alleges are already priced at wholesale rates. PRTC offers T-1 circuits as "special access services," a category of "exchange access services." Following the Agreement, PRTC agreed to provide T-1 circuits to Centennial but refused to provide them at a wholesale discount. Centennial, then, filed a complaint with the Board in May 2003, claiming that PRTC was failing to comply with certain provisions of the Agreement. In particular, Centennial claimed that PRTC's T-1 circuits were retail services subject to the 25% wholesale discount requirement.

On April 8, 2005, the Board issued an order granting Centennial's request. In reaching its decision, the Board interpreted 47 U.S.C. §§251(c)(4), 252, 47 C.F.R. § 51.605, and the Agreement.

**Civil No. 05-2225 (GAG)**                               3

The Board interpreted the FCC regulations as exempting "exchange access services" from the wholesale discount requirement, but not exempting high-capacity "special access services" like PRTC's T-1 circuits. PRTC contends that "special access services" are already priced at wholesale rates and that such discount applies exclusively to "retail" services.

PRTC filed the instant complaint for declaratory judgment and injunction on November 28, 2005. PRTC alleges that the Board's order is preempted by 47 U.S.C. §251(c)(4) and the implementing regulations issued by the Federal Communications Commission ("FCC").

**III.   Discussion**

   **A.   Section 252(e)(6)**

The Board argues that there is no subject-matter jurisdiction under 47 U.S.C. § 252(e)(6) because § 252(e)(6) limits federal court jurisdiction to approvals or disapprovals of interconnection agreements under § 252. PRTC, on the other hand, contends that the court has jurisdiction under § 252(e)(6) because there is a substantial nexus between the Board's determination and the interconnection agreement.

47 U.S.C. § 252(e)(6) provides in relevant part:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

Thus, in order for a party to claim jurisdiction under 47 U.S.C. § 252(e)(6), the state commission must make a determination under § 252. The party seeking jurisdiction must show "(1) a determination by the state commission under § 252, approving or rejecting an interconnection agreement; and (2) a party aggrieved by that determination." Destek Group v. New Hampshire PUC, 318 F.3d 32, 38 (1st Cir. 2003). When seeking jurisdiction over a determination other than an approval or rejection, there must be a "substantial nexus between the commission's determination and [the] interconnection agreement." Puerto Rico Tel. Co., 189 F.3d at 10.[1]

---

[1] The Board in the instant case incorrectly asserts that the court in Puerto Rico Tel. Co. established a three-part test for determining whether there was a sufficient nexus between the Board's determination and the Agreement. In particular, the Board contends that the First Circuit

**Civil No. 05-2225 (GAG)**                                              4

Defendant's rely on Destek in arguing that Section 252(e)(6) does not provide the court with jurisdiction. In Destek, the court held that it lacked jurisdiction under 47 U.S.C. § 252(e)(6) because the state commission had not made a determination approving or rejecting an interconnection agreement pursuant to § 252. Id. at 38-39.

Unlike Destek, the claim in the instant case does not arise from an approval or disapproval of an interconnection agreement. Instead, the issue arises from the Board's determination that PRTC was failing to comply with certain provisions of the Agreement pursuant to the Board's interpretation of FCC regulations. The holding in Destek does not determine whether or not the court has jurisdiction over a claim arising from the Board's decision.

The Board also relies upon the holding in Puerto Rico Tel. Co. in arguing that there is no jurisdiction. In Puerto Rico. Tel. Co. the state commission found that PRTC had not violated the interconnection agreement, but had violated provisions of Puerto Rico law. 189 F.3d at 9-13. The court held that district courts do not have authority under 252(e)(6) to review state commission decisions for compliance with state law. Id. at 13. The court found that it could not review the state commission's decision because the disputed portion of the order had an insufficient nexus to the interconnection agreement between the parties and was therefore not a "determination" under § 252. Id. at 9-13.

Contrary to the holding in Puerto Rico Tel. Co., this court finds that the Board's interpretation of the FCC limitation on wholesale discount has a sufficient nexus to the interconnection agreement between the parties. The interpretation is a result of the Agreement's provision[2] that specifically states that any Telecommunications Services made available to

---

requires a party to prove that "the claimant seeks review of whether an agreement satisfies the requirements of the Telecommunications Act." However, the court merely quotes the requirements of a Southern District of Indiana case in order to demonstrate that the language of § 252(e)(6) focuses the court's review on the agreement itself. Id. at 10-11 (quoting Indiana Bell Tel. Co. v. McCarty, 30 F. Supp. 2d 1100, 1103 (S.D. Ind. 1998)). The court did not use these requirements in assessing whether it had jurisdiction under § 252(e)(6).

[2] Section 6.01 of the Parties' Agreement provides:

**Civil No. 05-2225 (GAG)**                                  5

Centennial for resale must comply with the FCC regulations. Consequently, the Board interpreted § 51.605 encompassing the FCC's limitations and decided that PRTC must apply the wholesale discount for the T-1 circuits not engaged in exchange access. This decision, unlike Puerto Rico Tel. Co., was based on federal law.

Furthermore, the Board contends that the Board had no authority to apply the terms of the Telecommunications Act because the parties voluntarily negotiated the provision in dispute.[3] In particular, the Board claims that there could be no violation of the Telecommunications Act under a voluntarily negotiated agreement. While there is no direct precedent on point in this circuit, the Board relies on Verizon New Jersey v. Ntegrity Telecontent Servs., 219 F. Supp. 2d 616, 633 (D.N.J. 2002), where the court prohibited Ntegrity from relying on the "duties imposed by section 251 to litigate around the specific language provided in the negotiated contracts." The Board also relies on Law Offices of Curtis v. Trinko, L.L.P., 305 F.3d 89, 105 (2nd Cir. 2002), which held that "while the defendant may have breached its obligations under the interconnection agreement, because its duties as an ILEC are directly defined by that agreement, there was no underlying violation of subsections (b) and (c) of section 251." While the interconnection agreements in Ntegrity and Trinko included specific governing language, the Agreement in the instant case included a provision

---

> Any and all Telecommunications Services now or hereafter offered by PRTC on a retail basis to customers that are not Telecommunications Carriers shall be made available by PRTC to [Centennial] for resale under the terms of the Communications Acts, the FCC rules (including limitations set forth in 47 CFR § 51.605), and the Board Rules, and this Agreement as such time and in those locations as they are offered by PRTC on a retail basis to customers...

[3] The Board quotes 47 U.S.C. § 252(a)(1):

> Upon receiving a request for interconnection, services, or network elements pursuant to section 251 of this title, an incumbent local exchange carrier may negotiate and enter into a binding agreement with the requesting telecommunications carrier or carriers without regard to the standards set forth in subsections (b) and (c) of section 251 of this title.

**Civil No. 05-2225 (GAG)**                6

which applied FCC regulations to the interpretation of the Agreement. The Board, then, decided the dispute applying the FCC limitation.

Therefore, while circuit authority calls for jurisdiction under § 252(e)(6), such a determination is not dispositive of this issue. The Supreme Court has held "that even if Section 252(e)(6) does not *confer* jurisdiction, it at least does not *divest* the district courts of their authority under 28 U.S.C. § 1331 to review that Commission's order for compliance with federal law." Verizon Maryland., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 642 (2002).

**B.     Section 1331**

PRTC argues that the court has jurisdiction under 28 U.S.C. § 1331 based on the Supreme Court's decision in Verizon, 535 U.S. 635 (2002). The Board argues: (1) that PRTC's reliance on Verizon is misplaced; and (2) that PRTC's assertion of a nexus to federal jurisdiction is immaterial, insubstantial or frivolous.

District courts have original jurisdiction in all "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under § 1331, "federal courts have subject matter jurisdiction over suits against state administrative agencies for declaratory and injunctive relief based on claims that the agency has acted in a manner or issued a determination inconsistent with federal law." P.R. Tel. Co. v. Telecomms. Regulatory Bd., 2010 WL 1133859, at *3 (D.P.R. 2010) (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983); Local Union No. 12004, United Steel Workers of America v. Massachusetts, 377 F.3d 64, 74-75 (1st Cir. 2004)). Furthermore, a district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" Verizon, 535 U.S. at 643 (quoting Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89 (1998).

The Board contends that PRTC cannot rely on Verizon, alleging that the court rejected the argument that all interpretations of interconnection agreements give rise to federal court jurisdiction. In support of this assertion, the Board quotes the concurring opinion that states the court did not

address "[w]hether the interpretation of a reciprocal compensation provision in a privately negotiated interconnection agreement presents a federal issue." Id. at 651 n.4.

However, the court in Verizon found that "resolution of Verizon's claim turns on whether the Act, or an FCC ruling issued thereunder, precludes the Commission from ordering payment of reciprocal compensation." Verizon, 535 U.S. at 643. Like Verizon, the resolution of PRTC's claim turns on whether the Board's decision was "inconsistent with federal law and FCC regulations." 535 U.S. at 643. Thus, the complaint raises substantial questions of federal law.

The Board also alleges that PRTC's claim is immaterial, frivolous or wholly insubstantial because the Board could not and did not apply the Telecommunications Act in resolving the parties' dispute by interpreting their voluntarily negotiated language. See Verizon, 535 U.S. at 643 (citing Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89). However, PRTC alleges that the Board's order interprets the FCC's limitation in resolving the parties' dispute. P.R. Tel. Co., 2010 WL 1133859, at *4 (PRTC's assertion of federal court jurisdiction over a privately negotiated Agreement was not immaterial, insubstantial or frivolous.)

Therefore, the resolution of PRTC's claim raises substantial questions of federal law and are not immaterial, insubstantial or frivolous. Thus, the court has jurisdiction under § 1331.

**C.     Doctrine of Ex parte Young**

The Board contends that it did not waive its Eleventh Amendment immunity from suit and that PRTC's claim is barred from moving forward in federal court. However, the court does not need to determine whether or not the Board waived its immunity since the Board and its individual members may be subject to suit under the doctrine of Ex parte Young as applied in Verizon. 535 U.S. at 645 (citing 209 U.S. 123 (1908)).

The doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit if the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Id. (citing Idaho v. Couer d' Alene Tribe of Idaho, 521 U.S. 261, 296 (1997). Here, PRTC seeks declaratory and injunctive relief, alleging that the Board's order violated the Act and FCC rules. The prayer for injunctive relief- that the Board and Puerto Rico government be restrained from enforcing the order, from imposing on PRTC any sanctions for failure to comply with the order, and from

**Civil No. 05-2225 (GAG)**                              8

imposing on PRTC any requirement to apply a wholesale discount to special access services- satisfies the "straightforward inquiry." Verizon, 535 U.S. at 645 ("that state officials be restrained from enforcing an order in contravention of controlling federal law" met the "straightforward inquiry"). The prayer for declaratory relief meets the "ongoing violation of federal law" since it seeks a declaration of the Board's alleged misinterpretation which continues to affect PRTC. The complaint explicitly seeks prospective relief. Id. at 646 ("no past liability of the State, or any of its commissioners, is at issue").

Therefore, the Board is subject to suit under the doctrine of Ex parte Young and the Eleventh Amendment immunity does not apply.

**IV.   Conclusion**

For the aforementioned reasons, the court **DENIES** the defendant's motion to dismiss (Docket No. 14).

**SO ORDERED.**

In San Juan, Puerto Rico this 13th day of August, 2010.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge